## Upper Allen Township Referendum

*Roger B. Irwin,* for petitioners.

*George F. Douglas* and *John H. Bream,* for intervenor.

SHUGHART, P. J., April 5, 1963.—Ten sets of papers bearing the caption "Petition to have Question of Local Option for the Granting of Malt and Brewed Beverage Retail Dispenser Licenses placed upon the Official Ballot or Voting Machine Ballot Label for the Primary Election" were filed with the Election Bureau of Cumberland County on March 18, 1963. . . .

At the second hearing, it was stipulated and agreed that, of the total of 275 signatures appearing on the 10 petitions, 31 of the persons who signed were not registered as voters of the township. It was further stipulated that 244 of the signers were properly registered. It was stipulated that at the general election in 1962, the highest number of votes cast for candidates for any office on the ballot in Upper Allen Township was for the office of United States Senator and totaled 1,084 votes. It was also stipulated and agreed that at

the municipal election in 1961, the highest number of votes cast for any office were cast for the office of tax collector and numbered 833 votes.

The Liquor Code of April 12, 1951, P.L. 90, as amended June 28, 1957, P. L. 419, sec. 472, 47 PS §4-472, provides for a local option referendum on the question of granting liquor licenses and licenses to retail dispensers of malt and brewed beverages. ". . . Whenever electors equal to at least twenty-five per centum of the highest vote cast for any office in the municipality at the last preceding general election shall file a petition with the county board of elections of the county for a referendum . . . the said county board of elections shall cause a question to be placed on the ballots or on the voting machine board and submitted at the primary immediately preceding the municipal election. . . ."

Counsel for those objecting to the referendum petitions contends that to have a referendum, 25 percent of the votes cast for United States Senator at the 1962 general election must have signed the petition, or 271 persons. Since there were only 244 valid signatures, the number was insufficient and the petitions must be set aside. Counsel for the intervenor contends that the section quoted must be interpreted to mean that the number of signatures required shall be 25 percent of the highest vote cast in the last municipal election, or 208. If this interpretation is correct, then the 244 signatures exceed the number required. The question thus posed is whether the act requires the number of signatures to be 25 percent of the total votes cast in the last general election or at the last municipal election.

Section 2 of article VIII of the Pennsylvania Constitution provides that general elections shall be held in each even-numbered year and although the general assembly may alter the day on which the election be held the election must always be held in an even-

numbered year. Section 3 of article VIII of the Pennsylvania Constitution, provides inter alia:

". . . All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the *municipal election day;* namely, the Tuesday next following the first Monday of November in each odd-numbered year. . . . Provided, That such elections shall be held in an odd-numbered year." (Italics supplied.)

It is, therefore, well established that the term "general election" means the election held on the Tuesday following the first Monday of November in each even-numbered year and that the municipal elections are held on the comparable date in the odd-numbered years. The Pennsylvania Constitution further provides that municipal officials can be elected only at the municipal elections.

When the legislature used the term "preceding general election" in the Election Code, there can be no question whatsoever that it meant the election on the even-numbered years: article III, sec. 33, of the Statutory Construction Act of May 28, 1937, P.L. 1019, 46 PS §533. Further evidence that this was the meaning of the legislature is contained in the beginning of section 1 of the Act of 1957, supra, which provides for the local option election to be held on the primary election day immediately preceding any municipal election. Counsel contends that the words "vote cast for any office in the municipality" must be construed as meaning votes cast for a municipal office, and, therefore, the language of the act is ambiguous. This argument is not sound. The words "in the municipality" simply designate the geographical area within which the votes are to be tabulated. The licensing for the sale of malt and brewed beverages as well as for the sale of liquor under the Liquor Code is controlled by the will of the

electorate of the various municipalities. The use of the words "in the municipality" does not in any way qualify the words "last preceding general election". All through section 1 of the Act of 1957, supra, the legislature uses the terms "general election" and "municipal election." If they intended the words "in the municipality" to mean municipal election, they could and undoubtedly would have said so. Any construction such as that contended would ascribe to the words of the legislature a meaning that we are certain it did not intend. The meaning of the statute is clear. It means that the signatures on the petition for local option must equal at least 25 percent of the highest vote cast at the last preceding general election for any office voted upon in the municipality at that general election. In this situation, 271 signatures would have been required to place the question on the ballot. Since there were 244 signatures only, the petitions for the local option referendum are void and must be set aside.

The language regarding the number of signatures required on local option petitions has remained the same since the initial code of May 3, 1933, P. L. 252. Section 31 of this Beverage License Law provided that whenever electors equal to at least "ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election, shall petition . . ."

While the question posed here has never been specifically ruled upon in 30 years, the cases considering the vote on which to calculate the percentage have uniformly used the vote for an office at the general election in which no municipal officer may constitutionally be a candidate: Catherine Township Liquor Referendum Case, 382 Pa. 291, 294; Montoursville Referendum, 72 D. & C. 500, 502; Hoover v. Blair County Commissioners, 48 D. & C. 199; Hollidaysburg Borough Election, 69 D. & C. 538; Article VIII, section 3, Pennsylvania

Constitution. The absence of cases raising the question posed here supports our conclusion that the meaning of the words of the statute are clear and unambiguous.
. . .

### Order of the Court

And now, April 5, 1963, for the reason given, the prayer of the petition to set aside the petitions filed requesting the local option is granted and the petitions are set aside and the said matter not to be submitted to the electors of Upper Allen Township. An exception is noted for the aggrieved party or parties.