In Re: Petition To Have The Question of Local Option for the Granting of Malt and Brewed Beverage Wholesale Distributor's and Importing Distributor's Licenses Placed Upon the Official Ballot for the Primary Election in the Borough of Sharon Hill.

Fairview Associates, Inc., Appellant.

Submitted on briefs, April 6, 1981, to Judges MENCER, BLATT and MacPHAIL, sitting as a panel of three.

*Michael P. Dignazio*, for appellant.

*Richard C. Tinucci*, for appellee.

OPINION BY JUDGE BLATT, August 24, 1981:

This is an appeal from an order of the Court of Common Pleas of Delaware County which granted leave to certain electors[1] of the Borough of Sharon Hill to file additional signatures nunc pro tunc on their petition to place a local liquor referendum on the primary election ballot of May 15, 1979.

The referendum, authorized by Section 472 of the Liquor Code,[2] 47 P.S. §4-472, permits municipal electorates to decide whether or not liquor licenses shall be granted to wholesale distributors of malt and brewed beverages within the municipality. On March 6, 1979, the final day for the filing of referendum petitions, the electors filed their liquor referendum petition with the Delaware County Board of Elections. The petition contained 498 signatures. Within the time permitted by statute, Fairview Associates, Inc.,

---

[1] The electors who circulated the referendum petition were the Mayor and the Secretary of the Borough of Sharon Hill.

[2] Act of April 12, 1951, P.L. 90, *as amended.*

a beer distributor licensed to operate in the Borough, filed a motion to strike the petition on the ground that it contained an insufficient number of signatures.

Section 472 of the Liquor Code requires that a petition for a liquor referendum shall have a number of signatures "equal to at least twenty-five per centum of the highest vote cast for any office in the municipality . . . at the last preceding general election." It is undisputed that the highest number of votes cast in the Borough in the relevant preceding election was 2,292 votes, and that the referendum petition, therefore, needed a minimum of 573 signatures, of which it was 75 signatures shy at the time of filing.

The court below allowed an amendment nunc pro tunc on the ground that the electors' error was made in reasonable reliance on incorrect information provided by the Board of Elections, having found that the electors, prior to filing their petition, were advised by the Board of Elections that only 345 signatures were required. The electors attempted to verify this figure and were again advised by an employee of the Board of Elections that they needed 345 signatures, and, in reliance on the Board's information, the electors filed a petition containing only 498 signatures. Fairview Associates, Inc., has appealed the court's order which permitted an amendment, contending that the electors' failure to obtain the proper number of signatures was a fatal, non-amendable defect.

Section 976 of the Election Code,[3] 25 P.S. §2937, provides that nomination petitions shall be set aside when they contain an insufficient number of signatures. It is well settled, moreover, that when a party presents an election petition containing a fatal defect, amendment may not then be permitted on an allegation that the defect was caused by a misunderstanding

---

[3] Act of June 3, 1937, P.L. 1333, as amended.

or misreading of the Election Code. *Upper Allen Township Referendum,* 31 Pa. D. & C.2d 78 (1963); *Montoursville Referendum,* 72 Pa. D. & C. 500 (1949). It is also true, however, that a court may allow later amendment when a party's defective petition is the result of that party's reasonable reliance on a representation, misrepresentation or mistake by an employee or representative of the Board of Elections. *Hall Nomination Petition,* 26 Pa. Commonwealth Ct. 54, 362 A.2d 475 (1976); *Lewis' Petition,* 57 Pa. D. & C. 53 (1939); *see Carter Appeal,* 398 Pa. 548, 159 A.2d 691 (1960). It is undisputed here that the electors in this case relied upon incorrect information provided by the Board of Elections. The only issue presented here, therefore, is whether or not that reliance was reasonable. We hold that it was.

It is clear that the actual number of signatures required for the electors' petition was not evident from the statute. The electors therefore had to refer to sources outside the statute, and although it may have been possible to ascertain from sources[4] other than the Board of Elections the number of signatures "equal to twenty-five per centum of the highest vote cast for any office in the municipality . . . at the last preceding general election," the Board of Elections is required to maintain official records of the relevant election pursuant to Section 309 of the Election Code, 25 P.S. §2649, and it was therefore an obvious and reasonable source from which to seek the required information.

We believe that the clear public policy favoring access to the voting franchise militates in favor of a conclusion that the public should reasonably be expected to rely on statements from Board of Election employees acting in their official capacities. *Carter*

---

[4] The Secretary of the Commonwealth maintains results of elections in the Commonwealth. Section 302(k) of Election Code, 25 P.S. §2642(k).

408

*Appeal, supra; Lewis' Petition, supra.* We also note that the Court below found that the electors here attempted to verify the incorrect information they had received from the Board by contacting it at a later date, when they again received the same incorrect information from the Board. We believe, therefore, that the electors' reliance on the statements of employees of the Board of Elections was reasonable, and that the court below properly permitted the electors to file additional signatures on their petition nunc pro tunc.

ORDER

AND Now, this 24th day of August, 1981, the order of the Court of Common Pleas of Delaware County in the above-captioned case is affirmed.