**In re: Nomination Petitions Filed by David HOWELLS, Jr. as a Candidate for the Office of Magisterial District Judge in Magisterial District # 31-1-04.**

**Appeal of Objectors: Joseph P. Maher, Joseph James McGrath, Joseph S. Hilliard, Lisa A. Hardman, Theresa Brown and Meloney Dosunmu.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 2011.

Decided April 29, 2011.

Publication Ordered May 3, 2011.

 Joseph P. Maher, Allentown, for appellants.

Robert P. Daday, Allentown, for appellee.

BEFORE: BROBSON, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Objectors Joseph P. Maher, Joseph James McGrath, Joseph S. Hilliard, Lisa A. Hardman, Theresa Brown, and Meloney Dosunmu appeal from the March 25, 2011, order of the Court of Common Pleas of Lehigh County (trial court) denying Objectors' Petition Setting Forth Objections to the Nomination Petitions of Candidate David Howells, Jr., for the Office of Magisterial District Judge in Magisterial District No. 31–1–04 (Petition). We affirm.

The facts are not in dispute. On March 8, 2011, the deadline for filing nominating petitions in the current election cycle, Howells filed nominating petitions for candidacy on both the Democratic and Republican ballots for the office of Magisterial District Judge for District Number 31–1–04. Howells is currently serving as the Magisterial District Judge for that District after having been appointed by the governor to fill a vacancy.

Howells did not timely file a statement of financial interests with the Lehigh County Election and Registration Commission (Election Commission)[1] or the County

---

1. Section 605(a) of the Lehigh County Home Rule Charter, 339 Pa.Code § 1.6–605(a), provides as follows:

 There shall be an Election and Registration Commission which shall exercise all powers and duties now or hereafter conferred on County Boards of Election and Registration Commissions by applicable State laws, including the Pennsylvania Election Code, and shall have such other powers, duties

of Lehigh Human Resources Office as required by section 1104(b) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b), which provides as follows:

**(b) Candidate.—**

(1) Any candidate for a State-level public office shall file a statement of financial interests for the preceding calendar year with the commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

(2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

(3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). *Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.*

65 Pa.C.S. § 1104(b) (emphasis added).

Terry Harkins, Deputy Chief Clerk for the Election Commission, delivered the "Instructions to Candidates and Circulators of Nomination Petitions–2011" to all candidates. In relevant part, the instructions provided read as follows:

Candidates for county and local public office must file a Statement of Financial Interests with the governing authority of the political subdivision in which he/she is a candidate on or before the last day for filing a petition to appear on the ballot for nomination. A copy of the Statement must be attached to the petition to appear on the ballot. State-level public office candidates file with the commission and a copy must be attached to the petition. *Excluded are Judges (currently in office) and Magisterial District Judges (currently in office).*

Trial court's Findings of Fact No. 4 (emphasis added). At the time Howells filed his petitions, Ms. Harkins told him that he was not required to file a statement of financial interests under section 1104(b) of the Ethics Act.

On March 9, 2011, the Election Commission realized its mistake. Ms. Harkins called Howells and requested that he complete a statement of financial interests. On March 10, 2011, Howells filed two copies of the statement of financial interests with the Election Commission; Ms. Harkins advised Howells that she would deliver the second copy to the County of Lehigh Human Resources Office and did so the following day, March 11th.

Objectors filed their Petition challenging Howells' nominating petitions on March 15, 2011. The trial court held a hearing on the Petition on March 18, 2011, during which the issues were limited to whether Howells reasonably relied on the directions provided by the Election Commission thereby excusing his failure to timely file the statement of financial interests or whether the candidate's failure to timely file the same was a fatal error that should have precluded the filing of his nominating petitions.

The trial court recognized that sitting jurists, including an incumbent magisterial

and authority as are given by this Charter, by law or by ordinance of the Board.

district judge, are required to comply with the Ethics Act and to file a statement of financial interests when they run for office. The trial court further acknowledged that, under the plain language of section 1104(b) of the Ethics Act, a failure to timely file a statement of financial interests is a fatal defect to a petition to appear on the ballot. In addition, the trial court quoted our Supreme Court's decision in *In Re: Nomination of Paulmier*, 594 Pa. 433, 445, 937 A.2d 364, 371 (2007), which upheld the "fatality rule" set forth in section 1104(b) and explained that it was intended by the Legislature "to bar only those candidates from the ballot who fail to file statements of financial interests or who file them in an untimely manner."

Nevertheless, citing *Appeal of Fairview Associates, Inc.*, 61 Pa.Cmwlth. 404, 433 A.2d 929 (1981), the trial court noted that a court may allow a later amendment to a defective petition when the defect is the result of the party's reasonable reliance on a representation, misrepresentation, or mistake by an employee or representative of a board of elections. Concluding that Howells reasonably relied on the incorrect representations made by the Election Commission, the trial court held that in the very limited circumstances presented here, the late filing of the candidate's statement of financial interests was excusable.

On appeal, Objectors argue that the law allows no exception to the statutory requirement that a candidate timely file a statement of financial interests. Relying on *Paulmier* and *In Re Nomination Petitions of James H. Owen*, 922 A.2d 973 (Pa.Cmwlth.) (single judge opinion by Feudale, Sr. J.), *aff'd per curiam*, 592 Pa. 17, 922 A.2d 878 (2007), Objectors contend that the distinction between an amendable error and a fatal error is now settled. In addition, Objectors assert that the trial

court erred in finding that Howells' reliance on the Election Commission's instructions was reasonable and excused his failure to file the statement of financial interests in a timely manner.

*Owen* concerned objections to the nomination petition of James H. Owen for the office of judge on the Court of Common Pleas of Armstrong County. At the time, Owen was serving as a Magisterial District Judge in Armstrong County. Owen attached a statement of financial interests to his nomination petitions, but he did not separately file one with the Commission. Ultimately, the sole objection to Owen's nomination petition was his failure to file a statement of financial interests with the Commission.

Owen had received a "candidate's package" from the Secretary of the Commonwealth, informing him that he may have to file a statement of financial interest with the Commission, depending on his judicial status. Owen contacted the Commission to determine whether a statement must be filed by an "incumbent" judicial officer and was informed that incumbent judicial officers were not required to file with the Commission.

The court initially found in *Owen* that, in relying on the written and oral advice of the Commission, Owen substantially complied with the Ethics Act. Turning to the substantive issues, the court held that the provisions of the Ethics Act requiring that all candidates for public office file statements of financial interests with the Commission and append copies thereof to their nominating petitions do not violate separation of powers. Because Owen substantially complied based on his reliance on the Commission's advice, and because the ultimate issue decided was one of first impression, the court directed that its decision be applied prospectively "as removal of Owen from the ballot for following instructions

given to him by the Commission's employees and the Secretary's instructions, and based on longstanding practice would result in a grave injustice." *Id.* at 978. Judge Feudale concluded his opinion with a footnote discussing whether *any* act or omission relevant to the filing of a statement of financial interests is *per se* a fatal defect under section 1104(b) of the Ethics Act.

Shortly after *Owen* was decided, our Supreme Court clarified in *Paulmier* that section 1104 of the Ethics Act does not bar any candidate from the ballot if he or she files a statement of financial interests in a timely manner. Greg Paulmier filed a nomination petition for a position on Philadelphia City Council. He also filed a timely statement of financial interest pursuant to section 1105 of the Ethics Act, 65 Pa. C.S. § 1105. An objector filed a petition to strike Paulmier's nomination petition, alleging that the statement of financial interests contained material defects and/or omissions that would require his name to be removed from the ballot. Ultimately, the Supreme Court agreed that if Paulmier's statement of financial interests was deficient, the deficiency was a mere technical defect that was subject to amendment. More specifically, the court held that all defects related to the content of disclosures on a timely filed statement of financial interests are subject to timely amendment.[2]

Objectors contend that the decisions in *Owen* and *Paulmier* make clear that an untimely filing of a statement of financial interests is a fatal defect and not an amendable error. Objectors also assert that the trial court erred in determining that Howells' reliance on the Election Commission's misinformation was reasonable and that this reasonable reliance excused Howells' failure to timely comply with section 1104(b) of the Ethics Act.

 Initially, we emphasize that the question before us is not whether the failure to timely file a statement of financial interests is a fatal defect—it is—but whether, under certain circumstances, such a defect may be cured *nunc pro tunc.* Importantly, the decisions in *Owen* and *Paulmier* did not address this issue. In general terms, situations in which *nunc pro tunc* relief is properly allowed include those where untimeliness is due to non-negligent circumstances, either as they relate to a party or his counsel, and filing is accomplished within a short time after the party or his counsel learns of and has an opportunity to address the untimeliness, the time period which elapses is of very

2. The court explained as follows:
[A]s we stated above, the Ethics Act and the Election Code are in *pari materia,* and therefore, the language of each should be considered together. When the language of the Ethics Act is tempered by the language of the Election Code, it is clear that the intent of the Legislature is to encourage **both** full financial disclosure and protect voter choice. Read together, the Legislative intent is clearly best served by a rule that allows a timely filer to amend in order to come into full compliance giving the public both the benefit of full financial disclosure and the broadest choice of representatives. Therefore, we now hold that the fatality rule announced in Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file statements of financial interests or who file them in an untimely manner. Section 1104 does not bar any candidate from the ballot if he or she files in a timely manner, even if there are defects on the face of the form, so long as that candidate subsequently amends the form to correct the defect and comes into compliance with the Act in a timely manner. In other words, all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment.
*Id.* at 445, 937 A.2d at 371.

short duration, and the opposing party is not prejudiced by the delay. *See Cook v. Unemployment Compensation Board of Review*, 543 Pa. 381, 671 A.2d 1130 (1996).

Objectors contend that *Fairview* does not support the trial court's determination that Howells' untimely filing was due to his reasonable reliance on the Elections Commission's instructions. Objectors further assert that the holding in *In Re: Absentee Ballots of November 4, 2003*, 577 Pa. 231, 843 A.2d 1223 (2004) compels a contrary result.[3] We disagree.

*Fairview* involved an appeal from a trial court's order granting certain electors leave to file *nunc pro tunc* additional signatures on their petition to place a liquor referendum on the primary ballot. The electors' petition contained 75 fewer signatures than were required. The trial court allowed an amendment *nunc pro tunc* on the ground that the deficiency was due to the electors' reasonable reliance on incorrect information provided by the Delaware County Board of Elections.

On appeal in *Fairview*, our court considered whether the electors' failure to obtain the necessary number of signatures was a fatal, non-amendable defect. In relevant part, we stated as follows:

> [A] court may allow later amendment when a party's defective petition is the result of that party's reasonable reliance on a representation, misrepresentation

or mistake by an employee or representative of the Board of Elections. *Hall Nomination Petition*, 26 Pa.Commonwealth Ct. 54, 362 A.2d 475 (1976); *Lewis' Petition*, 57 Pa. D. & C. 53 (1939); *see Carter Appeal*, 398 Pa. 548, 159 A.2d 691 (1960). It is undisputed here that the electors in this case relied upon incorrect information provided by the Board of Elections. The only issue presented here, therefore, is whether or not that reliance was reasonable. We hold that it was.

*Fairview*, 433 A.2d at 930. In concluding that the electors reasonably relied on the Board of Elections' erroneous information, we observed that the actual number of signatures required was not evident from the statute[4] and that the Board of Elections was an obvious and reasonable source to consult. We then reasoned that "the clear public policy favoring access to the voting franchise militates in favor of a conclusion that the public should reasonably be expected to rely on statements from Board of Election employees acting in their official capacities." *Id.* at 931. We also found significant the trial court's finding that the electors attempted to verify the incorrect information they had received from the Board by contacting it at a later date and again received the same incorrect information. Accordingly, we held that the electors' reliance on errone-

---

**3.** Objectors also cite *In Re: Prosperino*, 972 A.2d 92 (Pa.Cmwlth.2009), in which Senior Judge Kelley affirmed the trial court's order sustaining objections to a nomination petition and ordering a candidate removed from the ballot based on the candidate's failure to file a statement of financial interests with the local governing authority (the county manager) as required by section 1104(b)(2) of the Ethics Act. However, *Prosperino* is materially distinguishable from the present case. In *Prosperino*, the candidate's statement of financial interests was not received by the county manager, and the candidate did not

have proof of mailing. More important, the issues on appeal did not concern the timeliness of the candidate's filing but were limited to whether a candidate was required to file two copies of financial interests statements with two departments of the same county and whether the county manager was, in fact, the proper authority with whom the statements were to be filed.

**4.** The referendum was authorized by section 472 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–472.

ous information provide by the Board of Elections was reasonable and that the trial court properly permitted the electors to file additional signatures on their petitions *nunc pro tunc.*

As in *Fairview,* Howells relied on incorrect information supplied by the Election Commission and verified that information during a subsequent conversation with Ms. Harkins. Although the correct information was otherwise available to him, in contrast to the facts in *Fairview,* we nevertheless believe that the reasoning set forth in *Fairview* is equally applicable here, i.e., the clear public policy favoring access to the voting franchise militates in favor of a conclusion that the public should reasonably be expected to rely on statements from Election Commission employees acting in their official capacities. Therefore, we agree with the trial court that Howells reasonably relied on the misinformation he received from the Election Commission.

Having so concluded, we believe that the Legislative intent recognized in *Paulmier* to encourage *both* full financial disclosure and protect voters' choice is fulfilled in this instance, and that, where Howells filed his statement of financial interests one day after he learned of the Election Commission's error and within three days of the statutory deadline, *nunc pro tunc* relief is proper.

We reject Objectors' contention that the holding in *Absentee Ballots* compels a contrary result. Briefly summarized, *Absentee Ballots* concerned an action in federal court by candidates seeking review of a decision by a county elections board to count the ballots of non-disabled absentee voters that were hand-delivered by third persons, where the Board of Elections explicitly permitted the practice. The federal district court issued a temporary restraining order directing that certain of the hand-delivered absentee ballots be segregated and a hearing held to address the validity of those ballots. Following the election, the county elections board voided seventy-four of those ballots, and the candidates appealed to the common pleas court. The trial court held that the absentee ballots were valid under the circumstances, and Commonwealth Court affirmed.

Observing that section 1306 of the Election Code,[5] 25 P.S. § 3146.6(a), unequivocally provides that absentee ballots must be delivered by mail or in person to the Board of Elections, our Supreme Court reversed. The court emphasized that whether or not the statutory language was ambiguous, the obvious and salutary purpose of the provision was to provide some safeguard that the ballot was filled out by the actual voter. The court explained that the purposes of absentee voting statutes are to allow those voters who are unable to attend the polling place on Election Day for specified reasons the opportunity to exercise their fundamental right to vote; to prevent fraud; and to achieve a reasonably prompt determination of the result of the election. The court concluded that to ignore the provision's clear instructions regarding in-person delivery would undermine the very purpose of the statute—to safeguard against fraud.

The court distinguished the matter from circumstances in which *nunc pro tunc* relief would be properly allowed.

No similar "recognized exception" exists that would permit a court to employ a jurisprudential doctrine to defeat a substantive provision of the Election Code. An appeal *nunc pro tunc* " 'is intended as a remedy to vindicate the right to an

---

**5.** Section 1306 was added by the Act of March 6, 1951, P.L. 3.

**624**

appeal where that right has been lost to some extraordinary circumstances.'" We have held that fraud or the wrongful or negligent act of a court official may be a proper reason for holding that a statutory appeal period does not run and that the wrong may be corrected by means of a petition filed *nunc pro tunc.* That principle has no application here. The Board of Elections' failure to follow clear substantive provisions of the Election Code does not constitute a breakdown in the court's operations which a court has the power to remedy. Moreover, the position taken by the Board was one which was more likely to invite, rather than remedy, fraud. In addition, that position went to substantive matters—how to cast a reliable vote—and not to a mere procedural matter, such as a filing deadline.

*Id.,* 577 Pa. at 248–49, 843 A.2d at 1233–34 (quotations and citations omitted.) In contrast to the circumstances in *Absentee Ballots,* the integrity of a vote is not at risk and no substantive statutory provision is implicated here. Instead, this matter involves the untimely compliance with a procedural provision—a filing deadline—and we reject Objectors' contention that *Absentee Ballots* precludes a *nunc pro tunc* analysis in these particular circumstances.

The court in *Paulmier* emphasized that the Ethics Act's goal of full financial disclosure must be reconciled with the Election Code's provisions aimed at protecting a candidate's right to run for office and the voters' right to elect the candidate of their choice. Our conclusion here is in accord with that principle.

Accordingly, we affirm.

### ORDER

AND NOW, this 29th day of April, 2011, the order of the Court of Common Pleas of Lehigh County, dated March 25, 2011, is hereby affirmed.