**[J-48-2014] [MO: Saylor, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: NOMINATION PETITION OF ROBERT GUZZARDI FOR THE REPUBLICAN NOMINATION FOR GOVERNOR OF PENNSYLVANIA IN THE REPUBLICAN PRIMARY OF MAY 20, 2014 | : No. 29 MAP 2014 : : Appeal from the order of the : Commonwealth Court at No. 158 MD 2014 : dated April 15, 2014. : : : : |
| APPEAL OF: RICHARD W. STEWART, ROBERT K. ROBINSON, RICHARD TEMS AND DONNA M. COSMELLO | : : : SUBMITTED: April 21, 2014 |

**DISSENTING OPINION**

| | |
|---|---|
| **MR. JUSTICE BAER** | **DECIDED: May 1, 2014** **OPINION FILED: August 18, 2014** |

I respectfully dissent. The majority holds that Pennsylvania courts may never, under any circumstances, invoke equity, specifically *nunc pro tunc* principles, to excuse a candidate's untimely filing of a statement of financial interests with the Ethics Commission because to do so would override the Legislative pronouncement in Section 1104(b)(3) of the Ethics Act that such omission "shall . . . be a fatal defect to a petition to appear on the ballot." 65 Pa.C.S. § 1104(b)(3). Adoption of such a harsh and inflexible rule runs counter to this Court's pronouncement that the strict disclosure requirements of the Ethics Act must be balanced with the liberal construction required under the Election Code in favor of ballot access. In re Nomination of Paulmier, 937 A.2d 364, 370-71 (Pa. 2007). Further, such ruling fails to appreciate that applying *nunc pro tunc* principles to the instant case does not relax the stringent statutory requirement of filing a timely statement of financial interests with the Ethics Commission, but rather recognizes that the candidate did not satisfy the statutory requirement here because there was a breakdown in the

administrative process. Finally, because the cases relied upon by the majority to preclude application of *nunc pro tunc* principles did not, in fact, involve requests for *nunc pro tunc* relief, in my view, they cannot foreclose the grant of equitable remedies when sought in the appropriate case.

Accordingly, I would adhere to the rule of law as set forth by the Commonwealth Court in this case as well as in prior published decisions, holding that a candidate's failure to file a timely financial statement with the Ethics Commission can be cured *nunc pro tunc* if the untimeliness is due to non-negligent circumstances, the filing is accomplished within a very short duration after the party learns of and has an opportunity to address the untimeliness, and the opposing party is not prejudiced by the delay in filing. See e.g., In re Nomination Petition of Howells, 20 A.3d 617, 621-22 (Pa. Cmwlth.), aff'd per curiam, 28 A.3d 915 (Pa. 2011).

That standard is satisfied here because, following an evidentiary hearing and credibility determinations, the Commonwealth Court determined as a matter of fact that Robert Guzzardi ("Candidate") was present in the Office of the Department of State, Board of Commissions, Elections, and Legislation, to file his nomination petition for the office of governor and his aide was prepared to file a timely statement of financial interests with the Ethics Commission when a Department of State employee volunteered misinformation that such filing was unnecessary because the Department of State could accept the filing. The Commonwealth Court also concluded that no prejudice arose from the late filing because Candidate's financial statement became publically available when it was filed timely with the Department of State, and Candidate corrected the omission promptly by filing a financial statement the day after learning that the advice given to him by Department of State employee was erroneous. Because these findings are

supported by the record, I would affirm the order of the Commonwealth Court, which denied Objectors' petition to set aside Candidate's nomination petition.[1]

As noted by the majority, this case involves the statutory interpretation of Section 1104(b) of the Ethics Act, which requires candidates for state-level pubic office to file a timely statement of financial interests with the Ethics Commission, and append a copy of the financial statement to the nomination petition filed with the Department of State.[2]

---

[1] In entertaining the possibility of *nunc pro tunc* relief, the majority cites Candidate's testimony that he was not personally aware of the need to file his statement of financial interests with the Ethics Commission for the proposition that Candidate should not, therefore, be able to claim a non-negligent administrative breakdown leading to his failure to file his statement with the Ethics Commission. While the evidence cited by the majority would certainly support this outcome, which is argued by Objectors, there was evidence to support either side's version of events and circumstances on this record. The Commonwealth Court, the ultimate arbiter of fact and credibility, concluded that Candidate's aide was aware of the need to file with the Ethics Commission and was ready to do so but for his reliance upon an election official's erroneous information that filing was unnecessary. Given that the Commonwealth Court chose to believe Candidate's aide's testimony to support its ultimate decision, this Court is not at liberty to re-examine the record and cite conflicting evidence to support a contrary outcome.

[2] The relevant provisions of Section 1104(b) provide as follows:

> Any candidate for a State-level public office shall file a statement of financial interests for the preceding calendar year with the [Ethics] commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.
>
> *                             *                             *
>
> No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to appear on the ballot.

(continued…)

Relevant here is Section 1104(b)(3), which declares that the "[f]ailure to file the statement [of financial interests] in accordance with the provisions of this chapter shall . . . be a fatal defect to a petition to appear on the ballot." 65 Pa.C.S. § 1104(b)(3).

The majority's interpretation of Section 1104(b) is straight-forward and has some facial appeal. It reasons that because the Legislature deemed the failure to file a timely financial statement with the Ethics Commission a "fatal defect" to the candidate's nomination petition, such omission can never be cured even, as here, through appeal to equitable principles. The theory is that "fatal defect" means not subject to amendment or cure, and that the case law of this Court confirms such interpretation. The majority posits that it was this Court's disapproval of a "fatal defect" approach when interpreting the predecessor to Section 1104(b)(3) in State Ethics Commission v. Baldwin, 445 A.2d 1208 (Pa. 1982), superseded by statute as recognized in In re Petition of Cioppa, 626 A.2d 146, 148-149 (Pa. 1993) (plurality), which led the General Assembly to adopt the "fatal defect" language at issue herein.[3] After an examination of the relevant case law, however, I respectfully disagree.

While the General Assembly's insertion of the "fatal defect" language in Section 1104(b)(3) may have been a legislative response to our opinion in Baldwin, the crux of my dissension lies in what this Court held in Baldwin, and, thus, what the General Assembly was "correcting" by employing the "fatal defect" language. In Baldwin, the State Ethics

_____

(…continued)

65 Pa.C.S. § 1104(b)(1), (3).

[3] Objectors herein rely on expressions in the plurality decision in Cioppa as supporting their position that the "fatal defect" language in Section 1104(b)(3) precludes the application of *nunc pro tunc* principles to cure a candidate's untimely filing of the statement of financial interests. This contention need not be refuted, however, as Cioppa was a plurality opinion, the reasoning of which garnered the joinder of only one Justice besides the author, and, thus, has no precedential value.

Commission challenged the nomination petitions filed by three candidates for state-level offices on the ground that the petitions violated then-Section 4(b) of the Ethics Act because the affidavits submitted with those petitions were false in that they attested that the candidates had filed financial interests statements with the Ethics Commission.[4] The evidence established that while all the candidates had filed their nomination petitions and accompanying affidavits with the Bureau of Elections before the deadline, the Ethics Commission had not received a timely statement of financial interests from any of the candidates. The Commonwealth Court held that Section 4(b) of the Ethics Act required the filing of a financial statement with the Ethics Commission prior to filing the nomination petition, and that the candidates' failure to do so invalidated their affidavits verifying that they had filed such statements and, consequently, invalidated the nomination petitions themselves, which required that the candidates' names be stricken from the ballot.

This Court reversed, characterizing the Commonwealth Court's holding as "stilted and harsh." Baldwin, 445 A.2d at 1210. Relying exclusively on the statutory language of Section 4(b), we held that the failure to file the statements of financial interests with the Ethics Commission did not operate to "fatally taint" the filing process so as to invalidate the nomination petitions as long as the information required by the financial interests

---

[4] Section 4(b) of the Ethics Act, the predecessor to Section 1104(b)(3), provided:

> (b) Each candidate for public office shall file a statement of financial interests for the preceding calendar year with the commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes an affidavit that the candidate has filed the required statement of financial interests with the commission.

65 P.S. § 404(b), repealed by 1998, Oct. 15, P.L. 729, No. 93, § 6(a)(2).

statements was received subsequent to the time of filing and was otherwise available for purposes envisioned by the Ethics Act.   Id.   This Court reasoned:

> To treat the affidavit attesting to the financial disclosure as an appendage to the qualifications for office set forth in the Election Code creates a fiction that does a disservice to the legislative intention underlying the enactment of Section 4(b).  Section 4(b) was not designed as positing a barrier to seeking public office, rather it was conceived as a way in which to obtain further information which could be available during the selection process.

Id.

Accordingly, this Court in Baldwin relaxed the statutory requirement of filing a timely statement of financial interests with the Ethics Commission.   We held that where there was no intent to deceive on the part of the candidate, the late filing of a financial disclosure statement, due to the candidate's carelessness or lack of due diligence, was of no consequence if the filing was subsequently made and the candidate's financial information was ultimately disclosed.   Significantly, we did not discuss principles of equity or the grant of *nunc pro tunc* relief, as equitable relief was not sought, and the case involved exclusively the interpretation of the statutory language. [5]

Thus, in my opinion, the General Assembly's adoption of the "fatal defect" language in Section 1104(b)(3) was in response to this Court's relaxation of the statutory requirement of filing a timely statement of financial interests with the Ethics Commission. The General Assembly categorized the failure to file a financial statement as a "fatal defect" to clarify that, contrary to this Court's holding in Baldwin, the filing of a timey

---

[5]  The Court in Baldwin recognized that some of the candidates did not receive the proper form to file the financial statement, and there was some uncertainty regarding compliance with the filing requirement.  445 A.2d at 1211-12.  However, the Court utilized these facts as a basis to interpret the statutory provision liberally in favor of allowing an untimely filing, and did not invoke the equitable principles of *nunc pro tunc,* as Candidate does in the instant case.

financial statement is, in fact, a prerequisite to seeking public office. It is unlikely that the legislature's action in this regard was done to preclude application of equitable principles where the late filing was due to extraordinary circumstances such as a breakdown of the administrative process, as is the case here, because no such request had been made in Baldwin, and, simply put, the issue of granting equitable relief was not in the case. Thus, unlike the majority, I am not persuaded that the foreclosure of *nunc pro tunc* relief was the "mischief" that the General Assembly intended to remedy by adopting the "fatal defect" language.[6]

Further, as noted, I do not view the general application of *nunc pro tunc* principles as relaxing statutory prerequisites, but rather as an acknowledgement that the statutory requirement exists, but was not satisfied in the particular case because of extraordinary circumstances, such as a breakdown of the administrative process. My point is illustrated by our decision in Cook v. Unemployment Compensation Board of Review, 671 A.2d 1130 (Pa. 1996), where the issue was whether an appellant could obtain *nunc pro tunc* relief after he filed an appeal from the denial of unemployment compensation benefits outside the time period established by the Unemployment Compensation Law.[7] This Court rejected the unemployment compensation referee's conclusion that the existence of a mandatory, legislative appeal period foreclosed the grant of *nunc pro tunc*

---

[6] For this same reason, our holding in Paulmier, *i.e.*, that the fatal defect rule applies to untimely filings, rather than defective ones, does not suggest that Section 1104(b)(3) forecloses equitable relief. As set forth supra at 1, I believe Paulmier supports, rather than refutes the application of equity under the facts presented because it recognizes that the strict disclosure requirements of the Ethics Act must be balanced with the liberal construction required under the Election Code in favor of ballot access. Id. at 370-71.

[7] Of course, Cook did not involve the "fatal defect" language at issue herein, but is cited to demonstrate that this Court has employed equity in the face of mandatory legislative timeliness requirements when justice so requires.

relief. Based on our previous decision in Bass v. Commonwealth Bureau of Corrections, et al., 401 A.2d 1133 (Pa. 1979),[8] we concluded that *nunc pro tunc* relief was warranted because the appellant took steps to appeal the determination; was unable to perfect his appeal due to the sudden onset of a medical condition, which required his hospitalized until after the statutory appeal period had expired; and that the appellant pursued his appeal promptly upon his release from the hospital, resulting in no prejudice to appellee.

The Commonwealth Court adopted this same equitable approach in the context of Section 1104(b)(3) of the Ethics Act in the case of In re Nomination Petition of Howells, 20 A.3d 617, 621-22 (Pa. Cmwlth.), aff'd per curiam, 28 A.3d 915 (Pa. 2011), which is on all fours with the instant case. There, an official with the Election Commission informed a judicial candidate that he need not file a statement of financial interests with the Ethics Commission under Section 1104(b) of the Ethics Act. The candidate relied on this erroneous advice and failed to file a timely financial statement. The day after the filing deadline, the Election Commission realized its mistake and notified the candidate, who filed the statement of financial interests the next day. Objectors subsequently filed a petition challenging the candidate's nomination petition based on the candidate's failure to comply with Section 1104(b). The trial court denied the objectors' petition, and held that the candidate was entitled to *nunc pro tunc* relief based on his reasonable reliance upon erroneous information given to him by an election official.

The Commonwealth Court affirmed. It acknowledged that the failure to file a financial statement constituted a fatal defect to the nomination petition under Section 1104(b), and that this Court interpreted Section 1104(b) in Paulmier, supra, as precluding

---

[8] This Court held in Bass that a court may allow an appeal *nunc pro tunc* where the appeal is untimely due to non-negligent circumstances, the appeal is filed within a short time after the appellant learns of and has an opportunity to address the untimeliness, and the appellee is not prejudiced by the delay.

candidates from the ballot who failed to file timely statements of financial interests. It clarified, however, that the question before it was "not whether the failure to timely file a statement of financial interests is a fatal defect -- it is -- but whether, under certain circumstances, such a defect may be cured *nunc pro tunc*." Id. at 621.

The Commonwealth Court in Howells relied on its previous decision in Appeal of Fairview Associates, Inc., 433 A.2d 929 (Pa. Cmwlth. 1981), which permitted amendment of a nomination petition *nunc pro tunc* when a party's defective petition resulted from its reasonable reliance on incorrect information provided by the Board of Elections. The Howells court explained that the "clear public policy favoring access to the voting franchise militates in favor of a conclusion that the public should reasonably be expected to rely on statements from the Election Commission employees acting in their official capacities." Howells, 20 A.3d at 623. The Howells court concluded that the legislative intent recognized by this Court in Paulmier, to encourage both full financial disclosure and protect voters' choice, is fulfilled where the candidate files the statement of financial interests shortly after learning of the Election Commission's error and within three days of the statutory deadline.[9]

The majority rejects this established and well-reasoned jurisprudence, upon which the Commonwealth Court in the instant case justifiably relied given that the court was obligated to follow its own binding precedent, in favor of a severe *per se* rule precluding the application of equitable principles in any case involving the untimely filing of a statement of financial interests under Section 1104(b)(3). I find this result to be unnecessarily harsh and inequitable as demonstrated by the facts of this case where the exclusive reason for the untimely filing was the erroneous advice offered by the Department of State employee. I agree with the Commonwealth Court's assessment

---

[9] This author joined in the unanimous per curiam order of affirmance in Howells.

that what occurred here constitutes a breakdown in the administrative process, which is clearly a non-negligent reason for the delay in filing. As espoused by the Commonwealth Court in Howells, Candidates should be able to rely on information given to them by Department of State employees acting in their official capacity at the filing office.

It is not beyond the imagination to contemplate other non-negligent scenarios that would prevent the timely filing of a financial statement with the Ethics Commission, such as a natural disaster, fire, or bomb threat in the filing office, which would preclude candidates from entering the building to file their statement of financial interests on the statutory filing deadline. Surely, the legislature could not have intended to remove from the ballot those prospective candidates who find themselves in such unfortunate circumstances.

While I share the majority's sentiment that legislative governance of elections foster orderly, efficient, and fair proceedings, Slip Op. at 7, I cannot agree that such governance eliminates the ability of this Court to apply traditional principles of equity to grant *nunc pro tunc* relief in the appropriate case. I emphasize that the exception should never be applied to swallow the rule, and that *nunc pro tunc* relief should only be granted in the rare case where the Candidate has attempted to file the statement of financial interests with the Ethics Commission and some unforeseen event has occurred that prevented the filing. See Criss v. Wise, 781 A.2d 1156, 1160 (Pa. 2001) (holding that "[t]he exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly

established that she attempted to file an appeal, but unforeseeable and unavoidable events precluded her from actually doing so.").[10]

In sum, rather than "refus[ing] to enforce the governing legislative directive," Slip Op. at 3, I believe the Commonwealth Court below ruled properly in accordance with that court's binding jurisprudence applying *nunc pro tunc* principles where a candidate, due to non-negligent reasons, failed to file a timely statement of financial interests with the Ethics Commission, and rectified that mistake promptly upon learning of the error, without prejudicing any party.

Accordingly, I dissent.

Madame Justice Todd joins this dissenting opinion.

---

[10] Additionally, as noted, the Candidate must also demonstrate that the filing is accomplished within a very short time after the Candidate learns of and has an opportunity to address the untimeliness, and the opposing party is not prejudiced by the delay in filing.