# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of the Nomination | : | |
| Papers of Mark Mlinarich, | : | |
| Independent Candidate for | : | |
| Magisterial District Judge | : | No. 949 C.D. 2021 |
| 05-3-04 | : | Argued: September 13, 2021 |
| | : | |
| Appeal of: Scott Butler | : | |

**BEFORE:** **HONORABLE RENÉE COHN JUBELIRER**, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: September 17, 2021**

Scott Butler (Objector) appeals from the August 18, 2021 Order of the Court of Common Pleas of Allegheny County (trial court) that denied Objector's Petition to Set Aside the Nomination Papers (Petition) of Mark Mlinarich (Candidate), who is seeking to appear on the November 2, 2021 General Election ballot as an Independent candidate for Allegheny County Magisterial District Judge District 05-3-04 (District Judge). At issue are whether Sections 951.1 and 951(e)(6) of the Pennsylvania Election Code (Election Code),[1] 25 P.S. §§ 2911.1, 2911(e)(6), require Candidate's removal from the ballot. Section 951.1 provides that

> [a]ny person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year . . . .

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2911(e)(6), 2911.1. Section 951.1 was added by Section 3 of the Act of July 12, 1980, P.L. 649, No. 134 (Act 134). Section 2 of Act 134 amended Section 951(e) to add Subsection (e)(6).

25 P.S. § 2911.1 (30-day requirement). Section 951(e)(6) requires that, appended to each nomination paper, shall be an affidavit swearing that the candidate "was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year." 25 P.S. § 2911(e)(6). In denying the Petition, the trial court found these provisions to be inapplicable to Candidate, who was not a "sore loser" because he had not been a candidate during the May 18, 2021 Primary Election, and Candidate had detrimentally relied on the statements of the Ballots & Returns Manager (Manager) of the Allegheny County Elections Division (Elections Division), who told him incorrectly that the Act of October 31, 2019, P.L. 552, No. 77 (Act 77), changed the 30-day requirement to 15 days.

On appeal, Objector argues that, because Candidate was a registered member of a party until 20 days before the primary, Candidate did not meet the 30-day requirement set forth in Section 951.1, and is, therefore, "ineligible to be the candidate of a political body," 25 P.S. § 2911.1, and Candidate cannot rely on the misinformation from the Elections Division to overcome this ineligibility. Objector also argues that Candidate's Affidavit contains a material falsehood in that Candidate swore that he was not a registered member of a party 30 days before the primary and is eligible for the office, neither of which are true, which makes the Affidavit invalid and void and nullifies Candidate's Nomination Papers.

## I.    Background

### A. Factual Background

The facts of this matter are not in dispute. On August 9, 2021, Objector filed the Petition. (Original Record (O.R.) Item 1.) In the Petition, Objector stated that Candidate filed Nomination Papers as an Independent candidate for District Judge

2

with the Allegheny County Board of Elections (Board) and filed a signed Political Body Candidate's Affidavit (Affidavit) with the Board on July 27, 2021 (Petition ¶¶ 4, 5; Exhibit (Ex). 2.) Candidate's Affidavit stated, in relevant part: "[I]f I am a candidate for election at a general or municipal election[,] **I shall not be a registered and enrolled member of a political party at any time** during the period of **[30] days prior to the primary** . . . ." (*Id.* ¶ 6 (quoting Ex. 2) (emphasis added).) Objector asserted that Candidate "was a registered and duly enrolled member of a political party . . . within [30] days of the May 18, 2021 primary election." (*Id.* ¶ 9.) Objector submitted that Candidate did not change his voter registration until April 28, 2021. (*Id.* ¶ 10.) Objector asserted that 30 days before the May 18, 2021 primary was April 18, 2021, a Sunday, making Candidate's last day to disaffiliate from a political party Monday, April 19, 2021. (*Id.* ¶ 11 (citing *In re Nomination Papers of Lahr*, 842 A.2d 327, 330 (Pa. 2004)).) Accordingly, Objector contended that Candidate is ineligible to be a political body candidate in the November 2, 2021 General Election. (*Id.* ¶ 12.) Objector also alleged that Candidate's Affidavit materially misrepresented that Candidate was eligible for the office sought and had not been "a registered and enrolled member of a political party at any time during the period of [30] days prior to the primary," which rendered the Affidavit invalid. (*Id.* ¶¶ 13-14.) For these reasons, Objector requested the trial court sustain the objections and strike Candidate's Nomination Papers.

The trial court held a hearing on August 16, 2021, where Candidate appeared pro se and Objector was represented by counsel. (*See* Hearing Transcript (H.T.) at 3.) Candidate testified that he had spoken to Manager of the Elections Division regarding the procedures and protocols for disaffiliating and that Manager had stated that Candidate "was able to disaffiliate by May 3rd," or 15 days prior to the May 18,

3

2021 primary election, "from a political party and act as a candidate for nomination in the upcoming election[.]" (*Id.* at 11.) Citing the recent statutory changes to the deadline for receipt of voter registration applications from 30 days to not later than 15 days before the election under Section 1231 of the Election Code, 25 P.S. § 3071, added by Section 4 of Act 77,[2] Candidate further believed that "there's a reasonable expectation from a registered voter that the 30-day window [to disaffiliate] has been replaced by a 15-day window before the primary" such that "a voter can register 15 days prior to the primary and a registered voter can disaffiliate or change parties within 15 days of a primary as per Act 77." (*Id.* at 12.) Candidate did not dispute the accuracy of the dates that Candidate was supposed to disaffiliate and actually did disaffiliate. (*Id.* at 13.) Again, citing to Section 1231(b)(1), Candidate asserted: "Subsection B and Citation 1 basically says [sic] that the ballot voter registration application is received by the appropriate commission not later than 15 days before the election." (*Id.* at 15-16.) Candidate maintained that the General Assembly "is holding a political candidate body [sic] at a higher standard and a higher burden to disaffiliate from a political party of 30 days before a primary election, instead of the outlined legislation of 15 days for a non[-]candidate[.]" (*Id.* at 16.) However, Candidate acknowledged that "all of the documentation that was given to" Candidate "seems to be reverting back to the old legislation where a voter or a candidate to disaffiliate from a political party had 30 days." (*Id.* at 11-12.) Conversely, Candidate introduced the 2021 Election Calendar and argued that it stated that May 3, 2021, was "the last day to register before the primary election and . . . the last day to change party enrollment for a non[-]partisan enrollment before the primary . . . ."

---

[2] Act 77 repealed former Section 1326 of the Voter Registration Act, *former* 25 Pa.C.S. § 1326, which set forth the previous 30-day deadline for voter registration. Section 1231 was amended by Section 7 of the Act of March 27, 2020, P.L. 41.

(*Id.* at 17.) Candidate, therefore, submitted that he should have had the ability to change party enrollment by May 3, 2021, which was 15 days prior to the primary. (*Id.*)

Manager agreed that she spoke with Candidate and exchanged emails with Candidate regarding when he had to change his registration in order to run as a political body candidate, which she believed was by May 3, 2021. (*Id.* at 24-25, 27.) On cross-examination, Objector asked Manager about the time frame of these conversations with Candidate, and Manager replied that an oral conversation took place on April 22, 2021, and the email exchange occurred on April 23, 2021. (*Id.* at 25-26.)

Candidate asserted that he also signed the Affidavit in reliance on Manager's erroneous advice. (*Id.* at 28-29.) Candidate further stated that, at "the time [Candidate] had signed the [A]ffidavit," Candidate "did not knowingly or willfully try to misrepresent any" fact but relied on Manager's advice. (*Id.* at 11-12, 29.) The trial court on the record stated that the trial court did not believe Candidate tried to misrepresent any fact knowingly or willfully in the Affidavit. (*Id.* at 29.)

The trial court denied Objector's Petition in its August 18, 2021 Order. (O.R. Item 2.) The trial court first determined that Objector's reliance on *In re Guzzardi*, 99 A.3d 381, 386 (Pa. 2014), for the proposition that Pennsylvania courts may not mitigate statutory provisions through equity, was misplaced because that matter concerned a provision of the Public Official and Employee Ethics Act (Ethics Act),[3] not the Election Code. The trial court further distinguished *In re Guzzardi* because the Ethics Act provision at issue included language stating that the failure of a candidate to file a statement of financial interest was a fatal defect, and Section 951.1

---

[3] Act of October 15, 1998, P.L. 729, *as amended*, 65 Pa.C.S. §§ 1101–1113.

5

does not contain similar language. The trial court also determined that Candidate's reliance on the advice from Manager was reasonable, non-negligent, and supported the Petition's denial. (O.R. Item 2 (citing *Appeal of Fairview Assocs., Inc.*, 433 A.2d 929, 930 (Pa. Cmwlth. 1981), and *In re Nomination Papers of Kim D. Williams* (Pa. Cmwlth., No. 412 C.D. 2019, filed April 17, 2019)).)

Objector filed a Motion for Reconsideration and brief in support, which the trial court denied. (O.R. Items 3-5.) Objector then appealed to this Court. Upon Objector's appeal, this Court, on August 30, 2021, directed the trial court to issue an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a) (Rule 1925(a) Opinion).

### B. *Trial Court's Rule 1925(a) Opinion*

The trial court filed its Rule 1925(a) Opinion, explaining its decision. First, the trial court explained that Act 77's changes, while not dispositive, were "relevant to context of the facts of this case, and that its specific provisions led to an understandable mistake by [Manager] . . . ." (Rule 1925(a) Opinion (Op.) at 4.) Moreover, the trial court explained that while Objector "appear[ed]" to violate Section 951.1's 30-day requirement, "that subsection was never intended to apply in the first place." (*Id.*) Specifically, the trial court stated: "Section [951]'s clear intent was to force a political candidate to choose between the primary route and the nomination route to the general election ballot and to prevent a losing primary candidate from filing nomination papers." (*Id.* at 5 (citing *Baronett v. Tucker*, 365 A.2d 179, 181 (Pa. Cmwlth. 1976)).) Quoting our Supreme Court's decision in *In re Nomination Papers of Scroggin*, 237 A.3d 1006, 1018-19 (Pa. 2020), the trial court determined that "[t]he purpose of this provision as applied to nomination papers is to identify and disqualify so-called 'sore-loser' candidacies, *i.e.*, those

6

individuals who unsuccessfully attempted to secure the nomination of a political party before filing nomination papers as a candidate of a political body." (*Id.* (emphasis omitted).) Thus, the trial court concluded, Section 951 does not apply because Candidate was not a candidate in a prior primary and was, therefore, not a "sore loser." (*Id.* at 5-6.) This conclusion, the trial court reasoned, was supported given "that [Section 951](e)(5)[4] and (6) . . . inherently prohibit[ed] a candidate from being a 'sore loser'" and that "[e]very single case dealing with Section [951] involve[d] . . . a 'sore loser' candidate attempting to run twice." (*Id.* at 6.)

From this, the trial court reasoned that the word "candidates" in the title of Section 951.1, "Limitation on eligibility of candidates," indicated that this section applied only to "those people who have already been candidates in the primary. Thus [Section 951].1 establishes a 30-day pre-primary disaffiliation choice deadline for only those people who have been primary candidates if they wish to proceed as an independent versus a political party candidate." (*Id.* (emphasis omitted).) The trial court held that its "reading of the statute is consistent with the affidavit requirements found in [Section 951](e)(5) and (6), which inherently prohibits a candidate from being a 'sore loser.'" (*Id.*) As such, the trial court concluded that the legislative intent of Section 951.1, and the use of the words "limitations" and "candidates" in the title, "was to expressly codify the pre-primary disaffiliation affidavit requirements inherently established in [Section 951](e)(5) and (6) for 'sore[ ]losers', and not for candidates like [Candidate]." (*Id.*)

---

[4] Section 951(e)(5) requires that a candidate attest in the affidavit that "his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for such office[.]" 25 P.S. § 2911(e)(5).

The trial court cited *In re Cohen for Office of Philadelphia City Council-at-Large*, 225 A.3d 1083 (Pa. 2020), as an example of a situation where our Supreme Court has held that a candidate is not a "sore loser" and can "run as an independent[]" despite having campaigned and circulated nominating petitions if the candidate voluntarily withdraws from the primary, either as of right or via judicial approval. (*Id.* at 7.) Having concluded that Section 951.1 did not apply, the trial court analogized Candidate's situation to that of the special election candidate in *In re Nomination Papers of Smith*, 431 A.2d 1096 (Pa. Cmwlth. 1981), *rev'd*, 430 A.2d 1156 (Pa. 1981), who had changed his registration after circulating nomination papers as an independent candidate. In *In re Smith*, the trial court explained, this Court removed the candidate from the ballot holding that the candidate was not a "candidate" for purposes of a third-party nomination until the change of registration and, therefore, any signatures received prior to that change could not be counted, which left the candidate without enough signatures. (*Id.* at 8.) Extrapolating from the holding in *In re Smith*, the trial court held that Candidate "simply had to disaffiliate prior to circulating his nomination papers to run as an independent[,]" and, having done so, Candidate could remain on the ballot. (*Id.*)

The trial court next concluded that its decision to deny the Petition was supported by Candidate's reasonable and non-negligent reliance on the advice from Manager. (*Id.* at 9 (citing *Appeal of Fairview Assocs., Inc.*, 433 A.2d at 930, and *In re Williams,* slip op. at 8-10).) Because "the 'sore loser' provisions simply d[id] not apply to the facts of this case," the trial court determined that there was "no equity issue" and that the holdings of *In re Guzzardi* and *In re Scroggin*, which preclude a court from using its equitable powers to deviate from the plain language of the Election Code, did not prevent the trial court from acting here. (*Id.*) Finally, the

trial court noted that it had found Candidate truthful in regard to Candidate believing that the boilerplate language of the Affidavit had not been changed to reflect Candidate's perceived change to the 30-day requirement. (*Id.* at 10.) Therefore, the trial court held that Objector's assertion that Candidate had committed a crime in attesting to false information, as raised in Objector's Motion for Reconsideration, was frivolous. (*Id.* at 10.)

## II. Parties' Arguments

### A. Objector's Arguments

On appeal, Objector contends that, pursuant to express mandates of Sections 951.1 and 951(e)(6), Candidate is ineligible to be a political body candidate for District Judge because Candidate was "a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the [P]rimary." 25 P.S. § 2911.1. Objector asserts that the trial court erred in its interpretation of the Election Code by relying on: (1) Section 951(e)(5) rather than Section 951(e)(6); and (2) cases that did not involve Section 951.1 and 951(e)(6), namely *Baronett*, 365 A.2d at 180 (decided before those sections were added to the Election Code); *Cohen*, 225 A.3d at 1084, 1085 n.1 (case did not involve "a general election political body candidate's failure to disaffiliate at least 30 days prior to the primary"); and *In re Smith*, 431 A.2d at 1097 (case concerned "a political body candidate's eligibility for special election, rather than the general election[.]"). (Objector's Brief (Br.) at 30-32.)

Objector also argues that Act 77 did not make any relevant changes to the Election Code. Objector maintains that while Act 77 "changed the Commonwealth's mail-in voting system and vastly expanded the option for Pennsylvanians to vote by mail[,] [i]t did not change the relevant provisions o[f] the statute related to the

9

nomination of political body candidates[,] [] the affidavit requirements for those candidates[,] or the [] disaffiliation deadline for political body candidates[.]" (*Id.* at 17.) At oral argument, Objector emphasized that Section 951.1's express 30-day requirement is unambiguous and, as such, the Court should ascertain the legislative intent by the plain language rather than looking to the statute's purpose.

Objector therefore asserts that, given the plain and unambiguous language of Section 951.1, Candidate cannot legally or factually rely on the incorrect information received from Manager to overcome those mandates. Factually, Objector argues that Candidate's reliance on the incorrect information did not cause Candidate to miss the deadline because the evidence of record establishes that Candidate did not seek advice about the 30-day requirement until April 22, 2019, two days after the start of the 30-day period. Thus, Objector contends, Candidate cannot rely on that after-the-fact communication to justify that he was a member of a party 30 days before the primary. (*Id.* at 29-30.)

Legally, Objector maintains that, contrary to the trial court's determination, "erroneous guidance from . . . the county board of elections cannot nullify the express provisions of the Election Code." (*Id.* at 22-23 (quoting *In re Scroggin*, 237 A.3d at 1021) (emphasis omitted).) Because the requirements of Section 951.1 are express provisions, Objector argues, the trial court erred in concluding that *In re Guzzardi* and Section 951.1 were inapplicable. Objector posits that our Supreme Court in *In re Scroggin* "made clear that [*In re*] *Guzzardi* is not limited to the Ethics [Act] and . . . applies to the Election Code" by applying *In re Guzzardi* to a challenge under the Election Code. (*Id.* at 25.) Objector further argues that the trial court's reliance on *Appeal of Fairview Associates, Inc.* was also in error, as that case "did not involve an 'express provision' of the Election Code," while Section 951.1 is an

10

express provision that sets forth a requirement for a candidate's eligibility, through the use of "shall," with which the failure to comply "should not be remedied by equitable principles." (*Id.* at 25-26.) Objector asserts that the trial court's reliance on *In re Williams* is similarly erroneous because the Court there considered a provision that contained uncertainty, since the Election Code did not expressly state at what county office a statement of financial interest should be filed for a multi-municipality magisterial district justice, and the challenged candidate "did everything reasonably possible to determine the correct filing location." (*Id.* at 27-28 (quoting *In re Williams*, slip op. at 8).) Here, Objector argues, Candidate did not do everything reasonably possible to determine the deadline before which Candidate had to disaffiliate from the political party, and which was clear from the express provision of the statute and the written guidance he had from the Elections Department. Objector maintains that any erroneous advice Candidate received cannot operate to nullify that express provision, particularly where Candidate did not start to even inquire about those requirements until after the date had passed. (*Id.* at 23-24 (citing 25 P.S. § 2911.1).)

Objector additionally argues that the trial court's Order should be reversed, and Candidate should be removed from the ballot, because Candidate falsely swore that he was eligible to be a candidate for office and not a registered member of any party 30 days preceding the primary, thereby making the Affidavit invalid and void. Under *In re Nomination Petition of Keith M. Cianfrani*, 359 A.2d 383, 384 (Pa. 1976), and *In re Nomination Petition of John R. Pippy*, 711 A.2d 1048, 1054 (Pa. Cmwlth. 1998), Objector argues, "an affidavit that includes sworn facts that were not true when the affidavit was executed renders the nomination [papers] materially defective and void, such that the nomination [papers] may be set aside." (Objector's

11

Br. at 11.) Objector posits that "sworn affidavits are to [e]nsure the legitimacy of information crucial to the election process" and "a false affidavit 'must be at least equated with the failure to execute an affidavit.'" (*Id.* at 11-12 (quoting *Petition of Cianfrani*, 359 A.2d at 384).) Therefore, Objector argues, "[f]alsely swearing to be eligible for an office for which one is running is a material defect that renders the nomination [papers] null and void[,]" the Affidavit is void and the Nomination Papers are fatally defective. (*Id.* at 12 (citing *In re Nomination Petition of Kathleen J. Prendergast*, 673 A.2d 324 (Pa. 1996)).)

## B. *Candidate's Arguments*

Candidate agrees with the trial court's conclusion that his "failure to disaffiliate from [a party] as prescribed by the Pennsylvania Election Code[] was not fatal to [his] potential candidacy because [he] was neither a 'candidate' nor a 'sore loser' and such non-negligent failure, as in this case[,] is simply not a fatal action." (Candidate's Br. at 7 (footnote omitted).) Candidate cites *In re Scroggin*, 237 A.3d at 1018-19, to define a "sore loser" as "individuals who unsuccessfully attempted to secure the nomination of a political party before filing nomination papers as a candidate of a political body." (Candidate's Br. at 8.) Because Candidate was never a candidate for a primary election and did not lose a primary election, Candidate's "efforts to get on the ballot of the general election was not a second run at being elected." (*Id.* at 7.) Candidate argues that precedent supports that the "sore loser" provisions only apply where an individual seeks a "second bite of the proverbial election apple." (*Id.* at 8 (citing *In re Scroggin*, 237 A.3d at 1006; *In re Smith*, 431 A.2d at 1100-01; *Baronett*, 365 A.2d 179).)

Candidate also cites *In re Cohen,* in which the candidate, after campaigning as a candidate in the primary, voluntarily withdrew before the primary occurred.

12

Although Candidate incorrectly states that the withdrawal was "after the time for disassociation had passed[]",[5] our Supreme Court did permit the candidate's name to be placed on the general election ballot. Candidate explains it was because the candidate was not a "sore loser" because the candidate "willfully r[an] for the party's nomination," which is the same situation as here. (*Id.* at 9.) Candidate further argues that he is more similarly situated to the candidate in *Cohen*, distinguishing the case sub judice from that in *Lachina v. Berks County Board of Elections*, 884 A.2d 867 (Pa. 2005), where the candidate was involuntarily removed from the primary ballot and the Court held that the candidate still qualified as a primary candidate because he intended to be on the primary election ballot and thus could not run in the general election. (*Id.*)

Candidate argues that *In re Guzzardi* is inapplicable to the present case because, unlike here, the Ethics Act "attached specific consequences for the failure of a potential candidate to conform to its requirements regarding the filing of financial disclosure statements[.]" (*Id.* at 10.) In contrast, Candidate argues, Section 951.1 contains no such stated consequences, and given that the Court in *In re Guzzardi* limited the "fatal[-]defect rule" to circumstances involving a statutorily-imposed consequence to the noncompliance, "there is no legislative basis for applying the 'fatal[-] defect rule'" to Candidate's 10-day deviation from the 30-day requirement. (*Id.* at 10.) Moreover, pursuant to *In re Smith*, 431 A.3d at 1098, Candidate argues that an individual does not become a "candidate" for the purpose of being disqualified under Section 951.1 unless and until he files nomination petitions as a candidate for a political party. Because Candidate never filed such

---

[5] We note that our Supreme Court in *In re Cohen* explained that "[b]ecause [the candidate] was not a registered member of a party thirty days before the May 21, 2019 primary, Section 951.1 [wa]s not implicated in th[at] matter." 224 A.3d at 1085 n.1.

13

petitions to become a candidate for a party, Candidate was not a disqualified "candidate" under Section 951.1. Candidate maintains that "one cannot be a candidate for a political party if one does not intend to be." (*Id.* at 12 (citing *Packrall v. Quail*, 192 A.2d 704, 706 (Pa. 1963)).) Accordingly, Candidate claims that because he never sought or intended to become the candidate for a party during the primary, he was not a "sore loser" in this matter and Section 951.1 is inapplicable.

Candidate next argues that the trial court correctly held that Candidate's reliance on the inaccurate information from the Elections Division was reasonable, non-negligent, and not disqualifying. (*Id.* at 14-15.) Candidate explains that Act 77 "muddied the water of election law" and confused Candidate with respect to the 30-day requirement for disaffiliation by candidates and the 15-day requirement for disaffiliation by voters. (*Id.*) Given those "conflicting" dates, Candidate sought advice from the Elections Division, and Manager advised him, incorrectly, that he was eligible to be the candidate of a political body in the General Election if he disaffiliated 15 days before the primary. (*Id.* at 15.) Under *Appeal of Fairview Associates, Inc.*, 433 A.2d at 931, Candidate argues that "when a potential candidate relies on inaccurate information provided by the Board of Elections, that reliance is reasonable and the potential candidate should not be punished for [such] reliance." (*Id.* at 16.)

Finally, Candidate asserts that the trial court properly held that Candidate was not disqualified by signing the inaccurate Affidavit. (*Id.* at 18.) Candidate maintains that the "ten (10)-day tardiness . . . [wa]s not crucial to the election process" and that "[n]o one has been adversely impacted by [Candidate's] error." (*Id.*) Pursuant to *In re Nomination Petition of Driscoll*, 847 A.2d 44, 51 (Pa. 2004), Candidate posits that "the affidavit cannot be found to be invalid[] when a candidate believed he or

14

she was being truthful," but requires "'evidence that the candidate knowingly falsified the affidavit with an intent to deceive the electorate.'" (*Id.* at 19.) Candidate contends that Candidate "believed that the boilerplate form he was signing had not been updated to reflect" the changes to the Election Code that Candidate alleges to have occurred in Act 77 and there is no evidence that Candidate "knowingly falsified [the A]ffidavit or intended to deceive anyone." (*Id.*) Candidate argues that "a potential candidate's erroneous affidavit should only be found to be disqualifying when[] the affidavit is 'materially false.'" (*Id.* at 19 (quoting *In re Hacker*, 728 A.2d 1033, 1034 (Pa. Cmwlth. 1999)).) Because Candidate's "actions were not made to deceive the electorate, nor w[ere they] materially false[,]" Candidate maintains that the inaccurate affidavit is not grounds for his removal from the ballot. (*Id.* at 19-20.)

### III. Discussion[6]
*A. Legal Principles*

When analyzing cases under the Election Code, the "longstanding and overriding policy in this Commonwealth [is] to protect the elective franchise." *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (quoting *Petition of Cioppa*, 626 A.2d 146, 148 (Pa. 1993)). Our Supreme Court has cautioned that while "the language of the Election Code . . . requires a liberal construction in order to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice[,]" *In re Nomination of Paulmier*, 937 A.2d 364, 371 (Pa. 2007), this Court "cannot ignore the clear mandates of the Election Code," *In re Canvass of*

---

[6] "In reviewing an order adjudicating challenges to [] nomination [papers], our standard of review permits reversal only when the findings of fact are unsupported by substantial evidence, where there was an abuse of discretion, or where an error of law was committed." *In re Nomination Petition of Beyer*, 115 A.3d 835, 838 (Pa. 2015).

*Absentee Ballots of November 4, 2003 General Election* (*Appeal of Pierce*), 843 A.2d 1223, 1231 (Pa. 2004). Further, where the Election Code provision at issue is clear and express, the Court cannot use equitable principles to deviate from that plain language. *In re Guzzardi*, 99 A.3d at 388; *In re Scroggin*, 237 A.3d at 1021.

In interpreting the Election Code, we apply the provisions of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. §§ 1501-1991. "[T]he polestar of statutory construction is to determine the intent of the General Assembly." *Appeal of Pierce*, 843 A.2d at 1230 (citing Section 1921(a) of the SCA, 1 Pa.C.S. § 1921(a) (stating that the courts' objective in construing or interpreting a statute is to "ascertain and effectuate the intention of the General Assembly"), and *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder Jr.)*, 834 A.2d 524, 531 (Pa. 2003)). It is a well-settled principle that "the best indication of legislative intent is the plain language of a statute." *Commonwealth v. Gilmour Mfg. Co.*, 822 A.2d 676, 679 (Pa. 2003). The General Assembly has directed that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Further, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" Section 1903 of the SCA, 1 Pa.C.S. § 1903.

Our Supreme Court has explained that,

> [u]nder Section 1921(c)[ of the SCA], it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistently with the [SCA], [our Supreme] Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity.

16

*Appeal of Pierce*, 843 A.2d at 1230 (citations omitted). Statutory language must be read in context with, "together[,] and in conjunction" with the remaining statutory language. *Commonwealth v. Off. of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014). However, it is not the court's role to "judicially usurp the legislative function and rewrite [unambiguous provisions in a manner that] the General Assembly clearly did not desire," "'no matter how well-intentioned'" those efforts may be. *Commonwealth v. Hopkins*, 117 A.3d 247, 262 (Pa. 2015) (quoting *Commonwealth v. Kirkner*, 805 A.2d 514, 516-17 (Pa. 2002)). Further, "court[s] may not amend [a] statute but instead must examine the statute as drafted by the legislature." *Holland v. Marcy*, 883 A.2d 449, 456-57 (Pa. 2005).

B. *The plain language of Sections 951.1 and 951(e)(6)*

With these rules of statutory construction in mind, we begin our analysis with the text of the Election Code. Section 951.1, titled "Limitations on eligibility of candidates," states:

> **Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary** and extending through the general or municipal election of that same year **shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year** nor shall any person who is a registered and enrolled member of a party be eligible to be the candidate of a political body for a special election.

25 P.S. § 2911.1 (emphasis added). Section 951, "Nominations by political bodies" provides for nominations of candidates by nomination papers, who are not nominated by a party primary. Subsection (e) sets forth the requirements of the candidate's affidavit, which must be appended to the nomination paper when it is filed. Consistent with the eligibility requirement in 951.1, Subsection (e)(6) requires

17

a candidate who "is a candidate for election at a general or municipal election," to state in the affidavit that "he **was not a registered and enrolled member of a party thirty (30) days before the primary** held prior to the general or municipal election in that same year."  25 P.S. § 2911(e)(6) (emphasis added).

We address first whether this provision applies to Candidate.  The plain language of Section 951.1 addresses who is eligible "**to be the candidate of a political body in a general or municipal election** held in that same year."  25 P.S. § 2911.1 (emphasis added).  By its plain terms, this provision applies to "**[a]ny person**" who wants to be such a candidate.  *Id.* (emphasis added).  Candidate is "[a] person" who wants "to be the candidate of a political body in [the] . . . municipal election held in" 2021.  *Id.*  As such, Section 951.1, and the corresponding affidavit requirement of Section 951(e)(6), apply to him.  Thus, the trial court's conclusion that it would only apply to a "sore loser" candidate, *i.e.*, one who was unsuccessful in the primary, is not supported by the plain language of Section 951.1.[7]

Having concluded Section 951.1 applies to Candidate, we examine that provision's language to determine what is required thereby.  The plain language of Section 951.1 unambiguously and explicitly states that a registered member of a party "**during any period of time beginning with [30] days before the primary . . . shall be ineligible** to be a candidate of a political body in a general . . . election."  25 P.S. § 2911.1.  This provision has three relevant considerations.  The first is party registration status, and whether the person is a registered or enrolled member of a

---

[7] Further, the trial court's reliance on the fact that no case had applied these provisions to someone who had not participated in a primary to support its narrow interpretation of Section 951.1 is misplaced.  While Section 951.1 may not have previously been applied to a candidate that had not run in a primary, this does not limit its applicability to individuals who fall within its ambit.

party.[8]  The second is timing, specifically, the applicable and relevant time frame as to when a person's party registration status affects their eligibility to be a political body candidate, which is "**during any period** of time **beginning with [30] days** before the primary . . . ."  *Id.*  The third is the consequence if the person is a registered member of a party during the 30-day period, which is that the person "shall be **ineligible** to be the candidate of a political body in a general or municipal election in that same year."  *Id.*  Here, the parties do not dispute that a candidate cannot be a registered member of a party and be a political body candidate, and Candidate here did change his party registration.  The parties do dispute, however, the applicable and relevant time period in this case, and how to interpret, and whether to apply, the consequence to Candidate.  Given that "the best indication of legislative intent is the plain language of a statute[,]" *Gilmour Manufacturing Co.*, 822 A.2d at 679, we look more closely at the text.

### 1. Applicable time period

In describing the time period, the statute not only includes a specific number, 30, for the period of days, but amplifies that the applicable time frame is "**during any period** of time **beginning with [30] days** before the primary. . . ."  25 P.S. § 2911.1.  Not being a registered and enrolled member of a party during this limitation period is a substantive requirement that must be met in order for a person to be eligible to be a candidate for a political body.  The General Assembly repeated and amplified this requirement by including it in Section 951(e)(6) as one of the matters to which a candidate for a political body must attest.  Thus, to appear on the

---

[8] Generally, the Election Code's definition of what constitutes a "political party" is tied to the percentage of votes an entity's (political party or political body) candidates receive in the general or municipal election preceding the primary.  Section 801 of the Election Code, 25 P.S. § 2831.

ballot, a candidate for a political body must attest that "he **was not a registered and enrolled member of a party [30] days before the primary**[,]**"** which is, essentially, that they have complied with the requirements of Section 951.1.  25 P.S. §§ 2911.1, 2911(e)(6)

Candidate argues that there is confusion regarding the ongoing applicability of the 30-day time period because, in Act 77, the General Assembly recently changed the deadline for receipt of valid voter registration applications before the primary from 30 days to 15 days.  *See* Section 1231(b) of the Election Code, 25 P.S. § 3071(b).  Thus, persons who want to change their voter registration status for the primary election can now do so up to 15 days before the primary, whereas before Act 77, the change had to be made 30 days before the primary.  This Court acknowledges that, prior to Act 77, there was consistency between the two deadlines as they were both 30 days, and as Candidate has contended, both deadlines implicate a person's registration status before a primary election.  Such consistency could suggest that the General Assembly intended both time periods to be the same, as Manager apparently believed.  However, had the General Assembly intended these timeframes to be the same, it could have stated that the time frame in Section 951.1 be "the deadline for receipt of voter registration applications."  Such language would undeniably link the two deadlines, but the General Assembly did not provide that link.

There is no question that, through Act 77, the General Assembly made numerous changes to the Election Code, including the change in the deadline as to when voter registration applications must be received (from 30 days to 15 days).  However, in engaging in statutory construction, it is important to consider both what the General Assembly says and does not say.  *Pilchesky v. Lackawanna County*, 88

20

A.3d 954, 965 (Pa. 2014). Considering this principle, we are mindful that when the General Assembly changed the time period in Section 1231(b) to 15 days, it did **not** similarly change the 30-day time period in Sections 951.1 and 951(e)(6), and that it could have done so. The Court may not amend statutory language but must read it as written by the General Assembly. *Holland*, 883 A.2d at 456-57.

Thus, were we to interpret Section 951.1 as containing the same 15-day time period as Section 1231(b), we would have to ignore the plain language and our rules of statutory construction, which provide that "it is **only** when the words of a statute are **not explicit** that a court may resort to other considerations, such as the statute's perceived purpose, in order to ascertain legislative intent." *Appeal of Pierce*, 843 A.2d at 1230 (emphasis added) (quotation marks omitted). Further, doing so would require the Court to replace the 30-day requirement in Section 951.1, with either "the deadline for receipt of voter registration application" or "15 days." Such an interpretation effectively rewrites the unambiguous language of Sections 951.1 and 951(e)(6), replacing it with language that the General Assembly did not enact. Quite simply, this Court is not permitted "to judicially usurp the legislative function and rewrite" or modify the unambiguous 30-day requirement or to disregard the clear language of Section 951.1 that establishes an express limitation on candidate eligibility. *Hopkins*, 117 A.3d at 262; *see also* 1 Pa.C.S. § 1903; *Holland*, 883 A.2d at 456-57. Thus, we cannot alter the plain language of Section 951.1 and 951(e)(6) to be something less than the 30-day requirement expressly set forth by the General Assembly.

2. Consequence

Candidate argues that the Court is not precluded from concluding that a person who changes their registration **20 days** before the primary election is nonetheless

21

eligible under Section 951.1. Candidate's argument is two-fold. First, he argues that *In re Guzzardi* is inapplicable because Section 951.1 does not contain the express "fatal-defect" language that the General Assembly had attached to a candidate's noncompliance with the Ethics Act. Second, he argues that given the recent enactment of Act 77, he reasonably and non-negligently relied on the information provided by Manager and should not be punished for doing so.

Candidate first argues that the limitations on judicial review of the Election Code expressed by our Supreme Court in *In re Guzzardi* are inapplicable here. This is because, Candidate asserts, Section 951.1 does not impose the "fatal-defect" consequences for noncompliance with its provisions that was used by the General Assembly in the Ethics Act for noncompliance with that act's requirements for the proper filing of statements of financial interests.

It is true that, in Section 951.1, the General Assembly did not use the phrase "shall . . . be a fatal defect to a petition to appear on the ballot," 65 Pa.C.S. § 1104(b)(3); instead, it used the phrase "shall be ineligible to be the candidate . . . in a primary or general election . . . [,]" 25 P.S. § 2911.1. A "defect" is "[a]n imperfection or shortcoming[.]" Black's Law Dictionary 527 (11th ed. 2019). "Fatal" means "[p]roviding grounds for legal or logical invalidity[.]" *Id.* at 750. Black's Law Dictionary also defines "fatal defect" as "[a] serious defect capable of nullifying a contract." *Id.* at 527. Therefore, a "fatal defect" would be a serious imperfection or shortcoming capable of providing grounds for legal invalidity of a petition to appear on the ballot. "Ineligible" is defined as "legally disqualified to serve in office." *Id.* at 928. Accordingly, here, "ineligible" means legally disqualified from appearing on the ballot as a candidate. Thus, the legislatively prescribed outcomes are the same – that the person shall not appear on a ballot.

22

Accordingly, that the legislature used different terminology to describe the same outcome is not a reason for finding that *In re Guzzardi* does not apply here.

Pursuant to *In re Guzzardi*, "courts are **not free to disregard** . . . **explicit legislative direction** based on equitable considerations." 99 A.3d at 385 (emphasis added). As our Supreme Court observed in *In re Guzzardi*, "[e]lections are appropriately regulated by the political branch precisely because they are inherently political" and, therefore, "the judiciary should act with restraint, in the election arena, subordinate to express statutory directives." *Id.* at 385-86. Thus, "where the legislature has attached specific consequences to particular actions or omissions, Pennsylvania courts may not mitigate the legislatively prescribed outcome through recourse to equity." *Id.* at 386.

Second, in light of the General Assembly's "explicit legislative direction" and expressly imposed consequences in Section 951.1, which we cannot disregard by applying equitable principles, *In re Guzzardi*, 99 A.3d at 388, the Court cannot accept Candidate's argument that he should not be punished for his reliance on the erroneous advice from Manager. While we acknowledge that Act 77's change to the voter registration deadline may have caused confusion as to whether the 30-day requirement applicable to a person who wants to be a political body **candidate** was also amended, Candidate asks this Court to exercise its equitable powers to mitigate the harsh consequences and allow him to remain on the ballot. However, pursuant to *In re Guzzardi*, we may not do so in light of the express language used by the General Assembly. Further, our Supreme Court has clearly indicated that reliance on official interpretations does not excuse a failure to comply with **express** provisions of the Election Code. *See, e.g.*, *In re Scroggin*, 237 A.3d at 1021 (stating that our Supreme Court "repeatedly has cautioned[ that] even erroneous guidance

23

from the Department [of State] or county boards of elections cannot nullify the express provisions of the Election Code"); *In re Guzzardi*, 99 A.3d at 388 (explaining that "even if there was some miscommunication at the Department of State . . . , this does not offset the underlying, self-acknowledged mistake" of the candidate "in failing to apprehend, from the outset, the express statutory requirement to file a statement of financial interests with the Ethics Commission."); *Appeal of Pierce*, 843 A.2d at 1225 (holding that "[n]o [] 'recognized exception' exists that would permit a court to employ a jurisprudential doctrine to defeat a substantive provision of the Election Code[]" and, therefore, that reliance on incorrect information from a board of elections will not overcome such provision).[9] Accordingly, the Court cannot, as Candidate asks, apply equitable principles to allow Candidate to remain on the ballot where he was a registered and enrolled member of a political party 20 days before the primary election in derivation of the express provisions of Sections 951.1 and 951(e)(6).

## C. The Candidate's Affidavit

Finally, Objector argues that Candidate's Affidavit is false and contains material falsehoods and, accordingly, is invalid and voids Candidate's Nomination Papers. Candidate maintains that his Affidavit does not require disqualification because he did not intend to deceive the electors and honestly believed that the Affidavit stated the incorrect deadline.

---

[9] Although Candidate points to *In re Nomination Papers of Kim D. Williams* and *Appeal of Fairview Associates, Inc.* as situations in which the Court has applied equitable principles, we note that the statutory provisions with which, respectively, the candidate and electors did not comply contained ambiguities regarding where a statement of financial interest should be filed and how many signatures were needed for a ballot initiative. Here, in contrast, Section 951.1's requirements and consequences are clear and unambiguous. Thus, neither of these cases require a different result.

24

As set forth above, Section 951(e)(6) requires a candidate to append to their nomination paper an affidavit attesting that the candidate was not a registered and enrolled member of party 30 days before the primary election. 25 P.S. § 2911(e)(6). Section 976(a) of the Election Code, 25 P.S. § 2936(a), provides that "[n]o nomination petition, nomination paper[,] or nomination certificate shall be permitted to be filed if . . . it contains material errors or defects apparent on the face thereof[.]" Our Supreme Court has explained that the requirement that candidates sign and file such affidavits is "[o]ne of the Election Code's critical anti-fraud mechanisms[.]" *In re Scroggin*, 237 A.3d at 1018. The Court has further stated:

> [T]he provisions of the election laws relating to the form of nominating [papers] and the accompanying affidavits are not mere technicalities but are **necessary measures to prevent fraud and to preserve the integrity of the election process**. . . . The requirements of sworn affidavits are **to insure the legitimacy of information crucial to the election process**.

*Petition of Cianfrani*, 359 A.2d at 384 (internal citations omitted). Thus, "it has long been the case that a candidate's failure to present and file an affidavit of candidacy with his or her nomination paper is a fatal defect necessitating its rejection." *In re Scroggin*, 237 A.3d at 1019 (citing *Brown v. Finnegan*, 133 A.2d 809, 813 (Pa. 1957)); *In re Street*, 516 A.2d 791, 793 (Pa. Cmwlth. 1986) (explaining that "a false candidate's affidavit is a fatal defect that cannot be amended and would require the setting aside of the nomination [paper]").

In *Petition of Cianfrani*, the candidate executed an affidavit attesting that he was a registered and enrolled member of a party, despite having not been registered and enrolled with that party until the day after the affidavit's execution. 359 A.2d at 384. Our Supreme Court held that "a false affidavit must be [a]t least equated with the failure to execute an affidavit[]" and "[s]uch a defect cannot be cured by

subsequent conduct and the [candidate's nomination] petition was therefore void and invalid." *Id.* As such, the Court concluded that the false affidavit could not be cured and the candidate's petition was void and invalid. *Id.*

Candidate compares the case sub judice to *In re Hacker*, 728 A.2d at 1034, arguing that a candidate's affidavit is only disqualifying where it is "materially false" and signed knowing that it was untruthful with an intent to deceive the electors. In *In re Hacker*, the candidate listed his residence as Kutztown, Pennsylvania, despite actually residing in Fleetwood, Pennsylvania. However, the candidate asserted that he had purchased the Kutztown home with the intent to refurbish it and listed the Fleetwood home for sale. Further, the candidate's voter registration and vehicle registration card listed the Kutztown residence. Nonetheless, this Court determined that the candidate's residence was in Fleetwood for the purpose of the Election Code, but did not find this defect to be disqualifying because the candidate truly believed his residence was in Kutztown. *Id.*

Following *In re Hacker*, this Court addressed the issue of a false affidavit in *In re Nomination Petitions of McIntyre*, 778 A.2d 746 (Pa. Cmwlth. 2001). There, the candidate listed his residence as Upper St. Clair, Pennsylvania, on his nomination petitions but attested to living in Pittsburgh, Pennsylvania, on the candidate's affidavits. This Court held that the candidate's attestation to living in Pittsburgh was false and required the setting aside of the petitions. *Id.* at 747. On appeal, our Supreme Court remanded for this Court to "make specific findings concerning [the candidate's] intentions or other factors that would bear upon the determination of whether [the candidate] should be included on the primary ballot." *In re McIntyre*, 770 A.2d 315, 316 (Pa. 2001). On remand, this Court found that the candidate's testimony regarding his residence in Pittsburgh was not credible and demonstrated

an intent to deceive the electorate. *In re McIntyre*, 778 A.2d at 753-54. The Court compared the circumstances to those in *Hacker* and, concluding the candidate filed the affidavits with "an intent to deceive" the electorate, held that the error constituted a material defect that could not be cured and, as such, the petitions had to be set aside. *Id.* Our Supreme Court affirmed. *See In re McIntyre*, 770 A.2d 326 (Pa. 2001).

In *In re Nomination Petition of Driscoll*, 847 A.2d at 50-54, our Supreme Court examined its decisions in *Petition of Cianfrani*, *In re Hacker* and *In re McIntyre*. There, the candidate listed his residence as Allentown, Pennsylvania, in the nomination petition and filed an affidavit attesting to the same. The objector asserted that the affidavit was false because the candidate actually resided in Haverford, Pennsylvania, which is outside of the district for which the candidate was seeking nomination for a congressional seat. After examining this line of cases in light of its holding in *Petition of Cianfrani*, our Supreme Court held that "before an affidavit may be declared void and invalid because it contains false information, **there must be evidence that the candidate knowingly falsified the affidavit with an intent to deceive the electorate**." *In re Nomination Petition of Driscoll*, 847 A.2d at 51 (emphasis added). Because the candidate there was not actually legally required to live in that congressional district **and** because, unlike the candidate in *In re McIntyre* or *Petition of Cianfrani*, the candidate did not "intentionally falsify his affidavit to deceive the electorate[,]" our Supreme Court held that the false affidavit was not disqualifying in that instance. *Id.* at 53. Thus, falsity in an affidavit alone is insufficient to disqualify a candidate; there must also be a showing that the candidate's attestation to the false information exhibited an intent to deceive the electors.

27

In the present case, the trial court found Candidate credible that he did not have an intent to deceive with regard to the Affidavit. This Court is bound by the trial court's credibility findings. *See Interest of N.B.-A.*, 224 A.3d 661, 668 (Pa. 2020) (explaining that appellate courts "are required to accept the findings of fact and credibility determinations of the trial court[] if they are supported by the record"). Here, the record supports the trial court's determination that the Candidate did not attest to the incorrect information in the Affidavit with an intent to deceive the electorate but was based on Candidate's understandable confusion regarding the changes from Act 77 and the erroneous advice received from the Elections Division. Therefore, we are bound by that determination. *Id.* Thus, the present facts are distinguishable from those in *In re McIntyre* or *Petition of Cianfrani* and akin to those in *In re Driscoll*, as Candidate's attesting to the Affidavit was not done with the intent to deceive but was based on a reasonable, albeit incorrect, belief that the Affidavit stated the wrong deadline. Accordingly, Candidate is not to be disqualified based on the Affidavit.

## IV. Conclusion

Election cases are often difficult, and this is no exception. Candidate is to be commended for his desire to serve the public by running for public office and for expending his time and efforts pursuing this honorable goal. The road to the ballot, which is governed by the statutory requirements set forth by the General Assembly, can be complicated. Unfortunately, in this case, for Candidate to be eligible to remain on the ballot, the Court would be required to disregard the clear and unambiguous requirements set by the General Assembly. This we cannot do. *See* 1 Pa.C.S. § 1921(b). While recognizing that the Election Code should be liberally construed, this Court nonetheless "cannot ignore the clear mandates of the Election

28

Code[,]" *Appeal of Pierce*, 843 A.2d at 1231, and cannot use equitable principles to deviate from that plain language, *In re Guzzardi*, 99 A.3d at 388; *In re Scroggin*, 237 A.3d at 1021. It is not the role of the courts to rewrite clear deadlines which the General Assembly has enacted. Should the General Assembly desire to change the 30-day requirement, it may do so.

In sum, although the trial court did not err or abuse its discretion, based on its credibility determinations, in holding that the falsity in Candidate's Affidavit did not require his removal from the ballot, it did err in holding that Section 951.1 of the Election Code does not apply to Candidate and that Candidate's reliance on misinformation he received excused the untimeliness of Candidate's disaffiliation. This is because the 30-day requirement is an express, unambiguous provision that applies to more than just "sore loser" primary candidates and cannot be abrogated by equitable principles. Therefore, Candidate's failure to comply with Sections 951(e)(6) and 951.1 renders him ineligible to be a candidate of a political body in the upcoming general election. Accordingly, the trial court's Order is, regretfully, reversed.

_____
**RENÉE COHN JUBELIRER,** Judge

29

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of the Nomination : 
Papers of Mark Mlinarich, : 
Independent Candidate for : 
Magisterial District Judge : No. 949 C.D. 2021
05-3-04 : 
 : 
Appeal of: Scott Butler : 

## **O R D E R**

**NOW**, September 17, 2021, the Order of the Court of Common Pleas of Allegheny County is **REVERSED**. The Allegheny County Board of Elections is directed to remove the name of Mark Mlinarich from the General Election ballot as an Independent Candidate for the Office of Magisterial District Judge for Magisterial District 05-3-04. The Prothonotary is directed to send a copy of this order to the Allegheny County Board of Elections.

 

 

**RENÉE COHN JUBELIRER,** Judge